IN UNITED STATES DISTRICT COURT
FOR NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHANTEL MCNAIR and KENEYSHA BANKS. individually and on behalf of all others similarly situated | |
|        Plaintiff, | CIVIL ACTION NO.: |
| v. | FLSA COLLECTIVE ACTION COMPLAINT |
| CARTER AND LITTLE INVESTMENT GROUP LLC. d/b/a FUSION SPORTS BAR & GRILL and KELVIN CARTER | JURY TRIAL DEMANDED |
|        Defendant. | |

## PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT

COMES NOW Plaintiffs Chantel McNair and Keneysha Banks (hereinafter, "Named Plaintiffs") individually and on behalf of all others similarly situated ("Plaintiffs"), by and through their undersigned attorneys, and brings this collective action against Carter and Little Investment Group LLC. d/b/a Fusion Sports Bar & Grill and Kelvin Carter (collectively "Defendants" or "Fusion"), they do hereby state and allege as follows:

### I.    INTRODUCTION

1.    The case implicates Defendants' violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of its employees at the federally mandated minimum wage rate and for Defendants' failure to pay Plaintiffs and all similarly situated workers their earned minimum wages.  Plaintiffs bring this case as a collective action under the FLSA, 29 U.S.C. 216(b).

2.      Defendants pay their servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA.  Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." See 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Bernal v. Bankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay owners for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA). *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped

occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC,* 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.*, No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.     Finally, an employer cannot require its tipped employees to perform nontipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois*, LLC, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois*, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL

1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

     8.    Defendants violated the FLSA in the following respects:

    a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiffs of the desire to rely on the tip credit to meet their minimum wage obligations. In fact, Defendants failed to inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

    b. **Violation for making illegal deductions that reduced the direct wage of Plaintiffs below the minimum required hourly wage for tipped employees:** Plaintiffs were required to purchase certain clothing and equipment to work for Defendants, and made to cover the cost of customer's bill when they "walk-out" without paying. These costs further reduced their wages below the minimum hourly wage required for tipped employees.

    c. **Violation for performing work unrelated to tipped occupation:** Plaintiffs was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, time spent waiting for and seating customers, collecting trash, wiping tables, sweeping floors, sweeping front entry door areas, cleaning server areas, cleaning condiment areas, cleaning the bottle service area, stocking server areas, stocking the condiments, cleaning the counter around the POS machine and register, setting tables, stocking bottle service area, folding napkins, vacuuming under tables in the dining area,

bussing tables, pre-filing condiment containers, bringing out plastic wares and extra plates, placing chairs on tables, attending mandatory monthly meetings, and performing mandatory opening and closing procedures.   The mandatory monthly meetings are completely unpaid and typically lasted at least 2-3 hours.  Each evening, the opening and closing procedures required the completion of duties on a checklist, which added at least 1-2 hours to their non-tip generating work.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:** Plaintiffs was required to perform greater than 20% of their time in performing non-tip producing side work, including, but not limited to, time spent waiting for and seating customers, collecting trash, wiping tables, sweeping floors, sweeping front entry door areas, cleaning server areas, cleaning condiment areas, cleaning the bottle service area, stocking server areas, stocking the condiments, cleaning the counter around the POS machine and register, setting tables, stocking bottle service area, folding napkins, vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic wares and extra plates, placing chairs on tables, attending mandatory monthly meetings, and performing mandatory opening and closing procedures.

e. **Violation for unpaid training:**   Plaintiffs were also required to attend mandatory training that they were not paid to attend, and which constituted additional non-tip generating work.

f. **Violations of the TIPA provisions against illegal tip pooling**: Defendants required Plaintiffs to share their tips with Defendants in violation of the tip credit provisions of the FLSA.   Under TIPA:[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit. 29 U.S.C. § 203.  Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers, to penalize Plaintiffs and Classmembers for "walk-outs", failing to "keep their energy up," failing to promote Fusion on their social media pages, or failing to assist with closing duties after they were already clocked out.

g. **Violations of the Non-Retaliation Provisions of the FLSA**:  Defendants retaliated against Plaintiffs for inquiring about their unpaid wages by threatening to remove them from the work schedule.   Defendants also retaliated against Plaintiffs immediately after receiving their demand letter requesting payment for unpaid wages and overtime, by removing them from the schedule and terminating their employment.  Defendants informed Plaintiffs and announced in a staff meeting that the basis for Plaintiffs' terminations were because they were planning to file a lawsuit to recover their unpaid wages.

9.      As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiffs and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiffs and all similarly situated workers and the minimum wage rate.

## II.     SUBJECT MATTER JURISDICTION AND VENUE

10.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.  In particular, Plaintiffs worked for Defendants in this District and were denied the wages he is owed in this District. Thus, Plaintiffs were harmed in this District.

## III.     PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Chantel McNair is an individual who worked for Defendant.  Her written consent to this action is attached hereto as Exhibit A.

13.     Plaintiff Keneysha Banks is an individual who worked for Defendant.  Her written consent to this action is attached hereto as Exhibit B.

14.     The Collective Members are all current and former servers and bartenders who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.

15.    Defendant, Carter and Little Investment Group LLC, is a Georgia for-profit Corporation with its principal place of business located at 5851 Buffington Road, Atlanta, GA, 30349 (within the District).   On information and belief, Defendant Kelvin Carter and Little Investment Group LLC.,  are the owners of Fusion Sports Bar & Grill.  Defendants may be served with a copy of the summons and complaint by leaving a copy with its registered agent for service Wendy Carter, 5851 Buffington Road, Atlanta, GA, 30349.

16.    Defendant Kelvin Carter ("Carter") is a natural person, General Manager and part owner of the Fusion and a resident of Fulton County, Georgia (within the District).   Kelvin Carter exercised control over Fusion's business operations.  Kelvin Carter acted directly or indirectly on behalf of Fusion, and, at all times mentioned herein, was an "employer" or joint employer of Plaintiffs within the meaning of the FLSA.  Defendant Carter may be served at 5851 Buffington Road, Atlanta, GA, 30349.

17.    Personal jurisdiction exists over Defendants because they have sufficient minimum contacts with the State of Georgia to confer personal jurisdiction.  Defendants conduct business throughout Georgia.  Furthermore, Defendants contracted with and employs Georgia residents, has Georgia customers, markets to residents of Georgia, and owns property in Georgia.  Moreover, the violation of the law and the harm committed to Plaintiffs occurred in Georgia.

### IV.    <u>COVERAGE</u>

18.    At all material times, Defendants have been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

19.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

20.    19. At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

21.    At all material times, Plaintiffs were employees engaged in the commerce or the production of goods for commerce.

## V.    **FACTS**

22.    Defendants operate a sports bar and restaurant in Atlanta, Georgia (Fulton County) commonly known as "Fusion Sports Bar & Grill."

23.    Defendants are a full-service restaurant and nightclub that employs servers (all female waitresses) and bartenders to provide services to customers.

24.    Defendants' waitresses and bartenders gather orders from customers and deliver food and beverages to the customers.  The waitresses and bartenders were rarely paid an hourly wage by Defendants but did receive tips from customers.

25.    Defendants paid their tipped workers less than the minimum wage under the law.

26.    Defendants attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiffs and Collective Members.

27.    Plaintiff Chantel McNair worked as a waitress and was paid less than the federal minimum wage.  She worked for Defendants from approximately February 13, 2021 to August 21, 2022, before she was terminated two days after formally demanding payment of her unpaid wages.

28.    Plaintiff Keneysha Banks worked as a bartender and was paid less than the federal minimum wage.  She worked for Defendants from approximately September 2021 to April 16, 2022.  Ms. Banks resigned because Defendants refused to pay her any of the wages she earned.

29.    The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion

in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.[1] The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushing to recoup the costs of free, exploited labor.[2]

30.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

31.     In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to properly provide Plaintiffs and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee, (4) that they could not be paid lower than the minimum statutory amount per hour ($2.13 per hour under the FLSA), and (5) that the tip credit shall not apply to any employee who does not receive the notice.

32.     Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation.

---

[1]     *See* Investor Statement in Support of Ending the Subminimum Wage  (last visited May 22, 2022)
[2]     *Id.* (emphasis in original).

As a result, Plaintiffs and the Collective Members were engaged in dual occupations while being compensated at the tip credit rate.

33.     Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time throughout a workweek, in excess of 20 percent or for more than 30 consecutive minutes, performing non-tip-producing side work related to the employees' tipped occupation.

34.     Specifically, Defendants maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time performing non-tip producing side-work, including but not limited to time spent waiting for and seating customers, collecting trash, wiping tables, sweeping floors, sweeping front entry door areas, cleaning server areas, cleaning condiment areas, cleaning the bottle service area, stocking server areas, stocking the condiments, cleaning the counter around the POS machine and register, setting tables, stocking bottle service area, folding napkins, vacuuming under tables in the dining area, bussing tables, pre-filing condiment containers, bringing out plastic wares and extra plates, placing chairs on tables, attending mandatory monthly meetings, and performing mandatory opening and closing procedures.

35.     Further, Defendants required Plaintiffs and the Collective Members to perform non-tipped producing work prior to the opening of the club and after the club closed.  Indeed, Defendants required the Plaintiffs and the Collective Members to arrive prior to the club opening for business when there were no customers, and no opportunity to earn tips, to perform manual labor cleaning and setup duties.

36.     Likewise, Defendants required the Plaintiffs and Collective Members to remain at the club to perform manual labor, cleaning duties and closing procedures, after Plaintiffs were

already clocked out and the club had closed for business.  During this time, there was no opportunity to earn tips.  At times, Plaintiffs spent over 31 minutes upward to 2  hours performing work before the club opened and the same amount of time after the club was closed performing non-tipped producing work.

37.    However, Defendants did not pay its waitresses and bartenders a minimum wage rate for this work.  In fact, Defendants never paid Ms. Banks any wages at all during her employment.  Ms. McNair only received wage payments twice during her entire employment with Defendant.

38.    On August 20, 2022, just two days after receiving Ms. McNair's demand letter, Defendants attempted to pay Ms. McNair a portion of the wages owed to her as they were terminating her employment.  Defendant Kelvin Carter specifically informed Ms. McNair that he was terminating her employment because she was planning to file this lawsuit.

39.    Later that night, after terminating Ms. McNair,  Defendant Carter called a meeting of the entire staff (including the waitresses and bartenders) where he announced, "I had to fire a waitress tonight over a lawsuit."  Kelvin Carter added to his announcement, "I don't want to work with someone who is going to be tripping over a payment of $2.13."  Another manager at the meeting added, "We really don't care about the lawsuit because we have a 2.5 million dollar insurance policy to cover us for these types of situations."

40.    On August 23, 2022, another part owner of Fusion, Wendy Carter, threatened two waitresses who were seeking payment of their wages saying, "if any of you sue Fusion, I'm coming for you and you will all go to jail."  She explained that she planned to report wrongdoing to the IRS, Department of Child and Family Services and Housing Authorities against any suing employees who receive Medicaid, food stamps, housing assistance or any other public assistance.

41.     The threatening comments were clearly intended to intimidate and dissuade employees from joining this lawsuit to recover their unpaid wages.

42.     The duties that Defendants required Plaintiffs and the Collective Members to perform were duties that are customarily assigned to "back-of-house" employees in other establishments, who typically receive at least the full minimum wage rate.

43.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

44.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts of non-tipped work.

45.     Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.  Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track the specific tasks for Plaintiffs or the Collective Members.

46.     However, Defendants did not allow its tipped employees to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

47.     Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate.  Defendants required their waitresses and bartenders to purchase costly uniforms.  The multiple uniforms Plaintiffs purchased were scantily clad outfits resembling those of exotic dancers.

48.     Defendants required their bartenders to purchase their own bartending tools including: cocktail shakers, cocktail strainers, cocktail spoons, straws, two sets of jiggers, bottle openers and wine openers.  Defendants never reimbursed Ms. Banks for purchasing those items.

49.    Defendants required waitresses and bartenders to pay for "walk-outs," meaning customers who leave without paying for their food and beverages.   They  were required to reimburse the house in cash for the total amount of the customer's bill.   For example, Plaintiff McNeal had a customer walk-out leaving a $300 plus bill on New Year's Eve 2022, and she had to pay Fusion the entire amount of the customer's bill.   *See Bernal v. Bankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay owners for shortages and unpaid tabs). After spending an entire evening working, she left the job with no tip money and negative $50.   She has spoken to other waitresses who also had to pay walk-out fees.

50.    Plaintiff Banks frequently had customer walk-outs.   One of the largest walk-out bills Defendant required her to pay for was in December 2021, when a customer walked out leaving a bill over $200.   She had to pay Fusion the entire amount of that customer's bill.   After spending an entire evening working, she left the job with no tip money and had to pay $10 out of her own pocket to tip out the barback.   During her time employed by Fusion she had 6 - 8 walk-outs, which required her to pay approximately $700.00 to Defendants.

51.    Plaintiffs incurred these uniform, equipment and walk-out costs for the benefit and convenience of Defendants.

52.    Defendants also required waitresses and bartenders to promote Fusion on their personal Instagram pages.   Each week, Plaintiffs spent 3 to 6 hours of off the clock time promoting Fusion on social media, without any compensation.   Plaintiffs were threatened with removal from the schedule and retention of their tips if they failed to post videos, flyers and messages promoting Fusion on their Instagram pages.

53.     Because Defendants failed to pay Plaintiffs an hourly wage during any week in which a tipped employee was required to pay for work-related expenses for Defendants' business, their compensation fell further below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

54.     In other words, by requiring Plaintiffs and the Class Members to pay for these work-related expenses, their hourly rates of pay were further reduced by the amount of the uniform and equipment costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

55.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiffs and the Collective Members.

56.     As such, Plaintiffs and the FLSA Collective Members were not compensated at the federally mandated minimum wage.

57.     Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA.  Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out an illegal pattern and practice regarding its tipped employees.  Defendants' method of paying Plaintiffs and their Collective Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

58.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27, which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have

considered that opinion letter held that the opinion letter was not entitled to any deference. *See Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019); *Callaway v. DenOne, LLC*, No. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019).

59.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.[3]

60.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.[4]

61.     After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021.[5]  After delaying the effective date of the Final Rule, on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit."[6]

62.     After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Dual Jobs final rule).  The Dual Jobs Final Rule became effective December 28, 2021.[7]

63.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes.  That is, when a

---

[3]     *See* Proposed Tip Regulations Under FLSA (last visited August 27, 2022).
[4]     *See* Proposed Tip Regulations Under FLSA (last visited August 27, 2022).
[5]     *See* Final Tip Regulations Under FLSA  effective March 1, 2021.(last visited August 27, 2022).
[6]     *See* Proposed Tip Regulations Under FLSA published June 23,2021 (last visited August 27, 2022).
[7]     *See* Proposed Tip Regulations Under FLSA published October 29,2021 (last visited August 27, 2022).

tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

64.     Here, Defendants illegally required Plaintiffs and the Collective Members to perform non-tip producing work for an excessive period of time.  That is because Defendants required Plaintiffs and the Collective Members to perform non-tipped work 31 minutes to two hours before the club was open for business, throughout their shifts, or after they were closed, when the club did not have customers and there was no opportunity to earn tips.  During this time, Defendants paid below the minimum wage rate and forced Plaintiffs and Collective Members to perform non-tip producing duties, as noted above.

65.     Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiffs and the Collective Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## VI.     FLSA § 216(b) COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

67.     Plaintiffs have actual knowledge, through conversations with their coworkers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

68.     The FLSA Collective Members are similarly situated to Plaintiffs in that they share the same duties and were subject to the same violations of the FLSA.

69.     Like Plaintiffs, the FLSA Collective Members were not given proper notice of the tip credit provisions, and performed substantial work that was unrelated to their tip producing duties.

70.     Further, the FLSA Collective Members were, like Plaintiffs, not properly informed of Defendants' intent to utilize the tip credit.

71.     Moreover, the FLSA Class Members were also burdened with deductions and expenses, including uniform, equipment and walk-out costs, that further dropped their compensation below the minimum wage. Such "deductions" constitute an employer's unlawful retention of tips in violation of the FLSA tip credit conditions under 29 U.S.C. 203(m), and precludes Fusion from invoking the "tip credit," *See Widjaja v. Kang Yue* USA Corp., No. 09-CV-2089 RRM CLP, 2011 WL 4460642, at *6 (E.D.N.Y. Sept. 26, 2011).   The tips inappropriately withheld constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act, and invalidate Fusion's eligibility to use the tip credit.  *See Martins v. MRG of S. Florida, Inc.*, 112 So. 3d 705 (Fla. Dist. Ct. App. 2013)(FLSA is violated when waitresses' costs incurred for uniforms and payment of walk-out customer's bills caused aggregate wages to fall below the minimum wage in a given week).

72.     Plaintiffs and the FLSA Collective Members all labored under the same company structure, policies, chain of command, and posted opening and closing duties checklists.

73.     The names and address of the FLSA Collective Members are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

74.     Although the exact amount of damages may vary among the FLSA Collective Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

75.     As such, the class of similarly situated Collective Members is properly defined as follows:

**All current and former waitresses and bartenders who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

## CAUSE OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### FAILURE TO PAY THE MINIMUM WAGE

76.     Plaintiffs incorporate the preceding paragraphs by reference.

77.     This count arises from Defendants' violation of the FLSA in connection with its failure to pay the minimum wages. See 29 U.S.C. § 206.

78.     Plaintiffs and the Collective Members were paid hourly rates less than the minimum wage while working for Defendants.

79.     Plaintiffs and the Collective Members were not exempt from the minimum wage requirements of the FLSA.

80.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiffs and the Collective Members being paid less than the Federal minimum wage rate.

81.     Since Defendants' are not eligible to apply a tip credit, it owes Plaintiffs $5.12 for each of the hours they worked each week during their employment.  Since Plaintiffs were rarely

paid $2.13 for the hours they worked each week, Plaintiffs are also owed an additional $2.13 for each of the unpaid hours they worked each week.

82.     Defendants' failure to pay the minimum wage to Plaintiffs and the Class Members in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. 29 U.S.C. § 255(a).

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS**
**OVERTIME PROVISIONS**

83.     Plaintiffs incorporate the preceding paragraphs by reference.

84.     Ms. Banks worked over 40 hours each week during the approximately 32 weeks of employment.  Since she is owed 1.5 times her regular rate of pay for each hour worked beyond 40.

85.     By its actions alleged herein Defendants willfully, knowingly and/or recklessly violated the FLSA provisions and corresponding federal regulations as detailed herein, by failing to properly pay overtime wage compensation to Banks in accordance with §§ 203, and 207 of the FLSA.

86.     Plaintiffs were not exempt employees under FLSA.

87.     Plaintiffs were never told that they were independent contractors, nor do they qualify to be considered independent contractors under the FLSA.

88.     Defendants deliberately avoided paying Banks her full compensation earned for all overtime hours worked.

89.     Defendants were aware that it could not lawfully deny Ms. Banks her appropriately calculated overtime wages.

90.     Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' overtime compensation.

91.     As a result of Defendants' violations of the FLSA, Ms. Banks  suffered damages by failing to receive overtime compensation in accordance with §§ 203, and 207 of the FLSA.

92.     As a result of the unlawful acts of Defendants, Ms. Banks was deprived of overtime compensation in an amount to be determined at trial, and she is entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, costs, attorneys' fees, and other relief.

## COUNT III

### VIOLATION OF THE FAIR LABOR STANDARDS
### ANTI- RETALIATION PROVISIONS

93.     Plaintiffs repeats, re-alleges and reiterates the foregoing allegations set forth in the prior paragraphs, as set forth herein and states:

The FLSA's anti-retaliation provision states:

*It shall be unlawful for any person – (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.*

94.     Plaintiffs engaged in an activity protected by the FLSA when they repeatedly inquired about when they would receive their checks for a substantial amount of unpaid wages. Plaintiffs sent several text and group chat messages to Defendants asking to be paid for the wages they were owed.

95.     Defendants acknowledged that Plaintiffs were owed wages but kept offering incredible excuses for why they could not make the payments.

96.     Plaintiffs suffered adverse action by the Defendants' subsequent to and contemporaneous with her protected activity, in that they were threatened with removal from the work schedule.

97.     Shortly before initiating this lawsuit, Plaintiffs sent Defendants a formal demand letter seeking payment of their unpaid wages.  Upon receipt of Ms. NcNair's demand letter, Defendants immediately removed Ms. McNair from the work schedule and told her that she was being terminated because of her involvement in a pending lawsuit against Defendants.

98.     Defendants' threatening statements, schedule removals and terminations of Plaintiffs occurred in close temporal proximity of Plaintiffs' complaints about unpaid wages, which supports a causal connection between the protected activity and the Defendants' adverse actions.

## WAGE DAMAGES SOUGHT

99.     Plaintiffs and the Collective Members are entitled to receive the minimum wage of $2.13 for each unpaid hour they worked.

100.   Plaintiffs and the Collective Members are also entitled to receive the difference between the $2.13 minimum wage and the tip credit adjusted minimum wage for each hour they worked.

101.   Plaintiffs and the Collective Members are also entitled to recover their attorney's fees and costs, as required by the FLSA.

102.   Plaintiffs are also enitied damages for emotional distress and mental anguish recoverable in retaliation claims brought under FLSA.

## JURY DEMAND

103.   Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

104.   For these reasons, Plaintiffs respectfully requests that judgment be entered in their favor awarding them and the Collective Members:

a.   Minimum wage compensation unadulterated by the tip credit;

b.   Unpaid overtime

c.   Liquidated damages;

d.   Lost wages and back pay

e.   General compensatory damages for retaliation including but not limited to damages for mental anguish and emotional distress;

f.   Reimbursement for all expenses and wages wrongfully withheld;

g.   An order conditionally certifying this matter as a collective action;

h.   An order requiring Defendants to correct its pay practices going forward;

i.   Reasonable attorney's fees, costs, and expenses of this action;

j.   Pre-judgment interest (to the extent liquidated damages are not awarded) and post judgment interest; and

k.   All such other and further relief to which Plaintiffs and the Collective Members may be entitled, both in law and in equity.

Respectfully submitted,

/s/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758

1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (470) 207-1559
F: (470) 231.0672
alizana@attorneylizana.com