IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHANTEL MCNAIR, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:22-cv-3516-AT |
| CARTER AND LITTLE | : |
| INVESTMENT GROUP, LLC d/b/a | : |
| Fusion Sports Bar & Grill, KELVIN | : |
| CARTER, and K CARTER | : |
| ENTERPRISES | : |
| | : |
| Defendants. | : |

**<u>ORDER</u>**

After an April 2024 hearing, the Court entered default judgment against Defendants[1] as to liability only, honoring the parties' request to negotiate the damages award through mediation. (Doc. 55). Yet Defendants failed to appear for mediation and have seemingly ceased communication with Plaintiffs. Thus, Plaintiffs' Motions for Default Judgment, [Docs. 37, 45], are once again before the Court for the determination of damages, attorney's fees, and costs. As discussed below, the Court **AWARDS** Plaintiffs **$252,477** in compensatory damages, to be

---

[1] "Defendants" refers collectively to Defendants Carter and Little Investment Group LLC, Kelvin Carter, and K Carter Enterprise LLC.

paid to each plaintiff as specified in Section III.D, *infra*, and **$69,115** in attorney's fees and **$867** in costs.

## I. Procedural History

On September 5, 2022, Plaintiffs Chantel McNair and Keneysha Banks filed an Amended Complaint, (Doc. 11), bringing a Fair Labor Standards Act ("FLSA") collective action on behalf of themselves and other similarly situated former servers and bartenders at Fusion Sports Bar & Grill in Atlanta, Georgia. The Complaint alleged that Defendants failed to pay Plaintiffs minimum wage, in violation of 29 U.S.C. § 206; failed to properly pay overtime wage compensation, in violation of 29 U.S.C. § 207; and unlawfully retaliated against Plaintiffs after they engaged in activity protected under the FLSA, in violation of 29 U.S.C. § 215. In support, Plaintiffs provided consent-to-join forms from five other former Fusion employees (the "Opt-In Plaintiffs"): Lashae Maxwell, Brynne Pearl, Sydney Sheppard, Shamiyah Love, and Lashaydra Pittman. *See* (Docs. 11-3, 11-4, 11-5, 11-6, 11-7).[2]

All Defendants defaulted, and Plaintiffs moved for default judgment. [Doc. 37, 45]. On April 16, 2024, the Court held a hearing on the Motions for Default Judgment, during which McNair, Banks, and the five Opt-In Plaintiffs testified. (Doc. 53). In support of their motions, Plaintiffs also provided declarations from

---

[2] In this Order, the Court will collectively refer to Plaintiffs McNair and Banks, as well as the Opt-In Plaintiffs, as the "Plaintiffs."

McNair, Banks, and the Opt-In Plaintiffs, as well as records and documentation supporting the requested attorney's fees. (Doc. 52).

On April 23, 2024, the Court granted Plaintiff's Motions as to liability only. (Doc. 55). The Court found that Defendants paid Plaintiffs less than the full minimum wage rate and failed to pay Plaintiff Banks and Opt-In Plaintiff Maxwell the required time-and-a-half overtime wage when they worked more than 40 hours per week. *See* (Doc. 55 at 6). The Court also held that Defendants unlawfully retaliated against Plaintiffs McNair and Banks and Opt-In Plaintiffs Maxwell, Pittman, Pearl, Sheppard by terminating their employment after they made complaints about their wages and/or participated in this lawsuit. *See* (Doc. 55 at 7).

Although the parties were permitted to attempt to negotiate the damages award through mediation, Defendants failed to participate in the mediation process. Thus, the Court must now determine the damages to be awarded for these FLSA violations, as well as Plaintiffs' attorney's fees and costs award.

## II. Legal Standard

An employer who violates the minimum wage, overtime wage, or anti-retaliation provisions of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Because here, Defendants have not made a showing of good faith, Plaintiffs are also entitled to liquidated damages. *See Spires v. Ben Hill County*, 980 F. 2d 683, 689 (11th Cir.

1993) ("[L]iquidated damages are mandatory absent a showing of good faith" by an employer that he had reasonable grounds for believing that his act or omission did not violate the FLSA).

"In cases involving default judgment, '[w]hile well-pleaded facts in the Complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.'" *Miata v. Bottoms Up Rest. Grp., LLC*, 2021 WL 9721151, at *2 (N.D. Ga. Apr. 29, 2021) (citation omitted); *Virgin Recs. Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007). "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they are from." *Miata*, 2021 WL 9721151, at *2.

### III. Discussion

#### A.  Unpaid, Non-Overtime Minimum Wages

The Court previously held that because Defendants were not entitled to pay Plaintiffs $2.13 per hour under the "tip wage credit," they were required to pay Plaintiffs a full minimum wage of $7.25 per hour for all hours worked—a difference of $5.12. *See* (Doc. 55 at 5). The FLSA also required Defendants to pay Plaintiffs overtime (time and a half) when their hours exceeded 40 hours per week. (*Id.*).

Plaintiffs seek to recover for three categories of unpaid wages: (1) non-overtime wages that were never paid; (2) non-overtime wages that were paid at a rate of $2.13/hr. not $7.25/hr.; and (3) overtime wages that were not paid.

4

### 1. Chantel McNair

McNair's declaration states that she worked 2,080 non-overtime hours—2,000 were unpaid and 80 were paid at a wage of $2.13/hr. *See* (Doc. 37-2 ¶¶ 59–60). Her non-overtime lost wages thus equal: (2,000 x $7.25) + (80 x $5.12) = $14,909.60. McNair also states that she was not paid for working 156 overtime hours. *See* (*id.* ¶ 59). Her overtime lost wages thus equal: 156 (1.5 x $7.25) = $1,696.50. This results in a total of $16,606.10 of unpaid wages.

### 2. Keneysha Banks

Banks's declaration states that she worked 1,280 non-overtime hours for which she was never paid. *See* (Doc. 37-3 ¶ 60). Her non-overtime lost wages thus equal: 1,280 x $7.25 = $9,280.00. Banks also states that she was not paid for working 160 overtime hours. *See* (*id.* ¶ 61). Her overtime lost wages thus equal: 160 (1.5 x $7.25) = $1,740.00. This results in a total of $11,020 of unpaid wages.

### 3. Lashaydra Pittman

Pittman's declaration also states that she worked 1,334 non-overtime hours for which she was never paid. *See* (Doc. 37-4 ¶ 60). Her non-overtime lost wages thus equal: 1,334 x $7.25 = $9,671.50. She does not seek to recover any unpaid overtime wages.

### 4. Brynne Pearl

Pearl's declaration states that she worked 1,334 non-overtime hours for which she was never paid. *See* (Doc. 37-5 ¶ 66). Her non-overtime lost wages thus

equal: 1,334 x $7.25 = $9,671.50. She does not seek to recover any unpaid overtime wages.

### 5. Sydney Sheppard

Sheppard's declaration states that she worked 1,350 non-overtime hours—1,300 were unpaid and 50 were paid at a wage of $2.13/hr. *See* (Doc. 37-6 ¶ 48). Her non-overtime lost wages thus equal: (1,300 x $7.25) + (50 x $5.12) = $9,681.00. She does not seek to recover any unpaid overtime wages.

### 6. Lashae Maxwell

Maxwell's declaration states that she worked 3,600 non-overtime hours for which she was never paid. *See* (Doc. 37-7 ¶¶ 51, 53). Her non-overtime lost wages thus equal: 3,600 x $7.25 = $26,100.00. Maxwell also states that she was not paid for working 270 overtime hours. *See* (*id.* ¶ 52). Her overtime lost wages thus equal: 270 (1.5 x $7.25) = $2,936.25. This results in a total of $29,036.25 of unpaid wages.

### 7. Shamiyah Love

Love's declaration states that she worked 2,883 non-overtime work hours—2,728 were unpaid and 155 were paid at a wage of $2.13/hr. *See* (Doc. 37-8 ¶ 48). Her non-overtime lost wages thus equal: (2,728 x $7.25) + (155 x $5.12) = $20,571.60. She does not seek to recover any unpaid overtime wages.

### B. Uniforms, Tools & Walkouts

Plaintiffs also seek to be reimbursed for certain reductions to their wages, resulting from the purchase their uniforms and work tools, and from being required to cover customer "walkouts" that left tabs unpaid.

The FLSA requires employers to "provide workers' weekly wages 'in cash or in facilities,' 'free and clear' of improper deductions, at a rate no lower than the minimum wage rate." *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1235 (11th Cir. 2002) (citing 29 U.S.C. § 206(a)(1); 29 C.F.R. §§ 531.35, 776.4). Thus, "[a]n employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage." *Arriaga*, 305 F.3d at 1236 (citing 29 C.F.R. § 531.36(b)).

The Eleventh Circuit has recognized that work tools and uniforms are "facilities" that primarily benefit the employer, and that workers must be reimbursed for these expenses "to the point that wages are at least equivalent to the minimum wage." *See Arriaga*, 305 F.3d at 1236–37. Similarly, employers violate the FLSA if they require employees to pay for losses caused by customer "walkouts," which reduce their wages below the minimum wage. *See Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972)[3]; *see also Brennan v. Haulover Shark & Tarpon Club, Inc.*, 1986 WL 587, at *16 (S.D. Fla. Jan. 27, 1986) ("Respondents have further violated the minimum wage provisions . . . by requiring employees to pay for shortages caused by 'walkouts,' . . . which reduced their wages to below the application minimum wage."); *cf. Benton v. Deli Mgmt., Inc.*, 396 F. Supp. 3d 1261, 1272 (N.D. Ga. 2019) (citing *Mayhue's Super*

---

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*Liquor Stores*, 464 F.2d at 1199) ("*Mayhue's* held that an employment agreement that required the defendant/employer's cashiers to repay the employer for shortages in the case drawer at the end of the day violated the FLSA.").

Plaintiffs' declarations sufficiently establish that they are owed the following reimbursements to bring their pay back into accordance with the minimum wage:

- **Chantel McNair**: $160.00 for uniform purchases and $410.00 for walkout charges, (Doc. 37-2 ¶ 60);

- **Keneysha Banks**: $280.00 for uniform purchases, $700.00 for walkout charges, and $150.00 for bartending equipment purchases, (Doc. 37-3 ¶ 61);

- **Lashaydra Pittman**: $160.00 for uniform purchases and $50 for walkout charges, (Doc. 37-4 ¶ 61);

- **Brynne Pearl:** $160.00 for uniform purchases and $80 for walkout charges, (Doc. 37-5 ¶ 67);

- **Sydney Sheppard**: $180.00 for uniform purchases and $225.05 for walkout charges, (Doc. 37-6 ¶ 49);

- **Lashae Maxwell**: $160.00 for uniform purchases and $179.00 for walkout charges, (Doc. 37-7 ¶ 53);

- **Shamiyah Love**: $500.00 for uniform purchases and $77 for customer walkout charges, (Doc. 37-8 ¶ 49).

## C.   Emotional Distress Damages

Plaintiffs next seek emotional distress damages for Defendants' unlawful retaliation. Although the Eleventh Circuit has "not ruled on the availability of damages for emotional damages caused by illegal retaliation under the Fair Labor

8

Standards Act,"[4] it has not barred district courts from awarding them.[5] *See Dickson v. United Fam. Med. Ctr., Inc.*, 860 F. App'x 705, 707 (11th Cir. 2021); *see also Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839 (11th Cir. 2009) (affirming a jury's award of emotional distress damages in an FLSA retaliation case, although the availability of those damages was not challenged on appeal).

Indeed, in *Dickson*, the Eleventh Circuit vacated the district court's denial of FLSA emotional distress damages—noting in part that the district court had not explained why such damages were unavailable under Eleventh Circuit law. *See Dickson*, 860 F. App'x at 707. In remanding the case to the district court, the Eleventh Circuit further advised that "general compensatory damages . . . need not be proven with a high degree of specificity," and that a plaintiff's hearing testimony "alone may support an award of emotional-distress damages, so long as it 'establish[es] that the plaintiff suffered demonstrable emotional distress, which

---

[4] Three circuits have held that such damages may be awarded in FLSA retaliation cases. *See Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1066 (5th Cir. 2016); *Moore v. Freeman*, 355 F.3d 558, 563 (6th Cir. 2004); *Travis v. Gary Cmty. Mental Health Ctr.*, 921 F.2d 108, 112 (7th Cir. 1990). And like the Eleventh Circuit, three other circuits have upheld jury awards of emotional damages in FLSA retaliation cases although their propriety was not challenged on appeal. *See Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 530, 539–42 (1st Cir. 2015); *Broadus v. O.K. Indus., Inc.*, 238 F.3d 990, 992 (8th Cir. 2001); *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999).

[5] Accordingly, other district courts in this circuit have found that emotional distress damages may be awarded for FLSA retaliation claims. *See, e.g., Bogacki v. Buccaneers Ltd. P'ship*, 370 F. Supp. 2d 1201, 1205–06 (M.D. Fla. 2005); *Yuzhaninov v. Optim LLC*, 2018 WL 11488017, at *5 (S.D. Fla. June 14, 2018) (collecting S.D. Fla. cases); *Henley v. Coosa Pines Golf Club LLC*, 2011 WL 13228008, at *8 (N.D. Ala. Jan. 28, 2011); *Canada v. Ready Mix (USA), LLC*, 2008 WL 11377689, at *4 (N.D. Ala. Sept. 19, 2008).

must be sufficiently articulated.'" *Id.* (quoting *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005)).

Here, five Plaintiffs provided hearing testimony that adequately established that they suffered emotional distress tied to their termination from Fusion Sports Bar & Grill.[6] Although "there is no precise formula for the assessment of mental anguish and distress damages," *Henley v. Coosa Pines Golf Club LLC*, 2011 WL 13228008, at *8 (N.D. Ala. Jan. 28, 2011), the more than $20,000.00 in emotional distress damages that counsel has requested for each affected plaintiff is far more than the Court is able to award based on their testimony.

### 1. Chantel McNair

McNair testified that after she was terminated for participating in this lawsuit, she experienced stress from struggling to pay her bills and rent, and from hearing that Fusion management was speaking negatively about her to other employees. Based on her testimony, Plaintiff is entitled to $5,000 in compensatory damages for the emotional distress that she suffered. *See id.* (awarding $10,000 in emotional distress damages for FLSA plaintiff that experienced "depression and the need for anti-depressive medication, loss of sleep, and anxiety stemming from the loss of his home"); *Yuzhaninov v. Optim LLC*, 2018 WL 11488017, at *5 (S.D. Fla. June 14, 2018) (awarding $5,000 in emotional distress damages for FLSA plaintiff who "worr[ied] about being able to provide for his daily living expenses,

---

[6] Opt-In Plaintiff Shamiyah Love is not pursuing an FLSA retaliation claim or associated emotional distress damages.

10

including rent, gas, and food"; "was constantly stressed," which "interfered with his ability to sleep"; and suffered "a perceived threat from [his employer] that he would have difficulty finding work in their Russian community").

### 2. Lashaydra Pittman

Pittman testified that after she was terminated for participating in this lawsuit, she experienced stress and depression from struggling to pay her bills and her rent. She stated that she is a single mother of two children, and that she often cried while trying to figure out how she would continue feeding and housing her children. Pittman also testified that Fusion management made certain threats to her and other employees involved in the lawsuit that were meant to discourage them from seeking government assistance. Based on her testimony, Pittman is entitled to $5,000 in compensatory damages for the emotional distress that she suffered. *See Yuzhaninov*, 2018 WL 11488017, at *5; *Henley*, 2011 WL 13228008, at *8.

### 3. Bryne Pearl

Pearl testified that after she was terminated for participating in this lawsuit, she experienced stress and depression from struggling to pay her bills and her rent. She stated that she is a single mother who was in school at the time of her termination. She recalled crying while trying to figure out how she was going to make ends meet without a local support system. Pittman also testified that Fusion management made certain threats to her and other employees involved in the lawsuit that were meant to discourage them from seeking government assistance.

Based on her testimony, Pearl is entitled to $5,000 in compensatory damages for the emotional distress that she suffered. *See Yuzhaninov*, 2018 WL 11488017, at *5; *Henley*, 2011 WL 13228008, at *8.

### 4. Lashae Maxwell

Maxwell testified that after she was terminated for repeatedly asking Fusion management to pay her overdue wages, she experienced stress and depression from struggling to pay her bills and her rent. She ultimately lost her apartment and is still having to live with a friend. Maxwell testified that she became so depressed that often she struggled to get out of bed, lost her appetite, and lacked the energy or focus to get though the day. She stated that she had trouble getting another job at another club or lounge, which she attributes to Fusion blacklisting her with other establishments. Based on her testimony, Maxwell is entitled to $5,000 in compensatory damages for the emotional distress that she suffered. *See Yuzhaninov*, 2018 WL 11488017, at *5; *Henley*, 2011 WL 13228008, at *8.

### 5. Keneysha Banks

Banks testified that after she was terminated for repeatedly asking Fusion management to pay her overdue wages, the stress and depression from her precarious financial situation transformed her personality. She is a single mother with an autistic and epileptic daughter. At the time Banks was terminated, her daughter was four years old. Due to her daughter's special needs, she is unable to enroll her in a typical Pre-K program. Banks testified that losing her job while trying to take care of her daughter has put her in a financial hole, resulting in

12

missed rent and bill payments. She also explained that her constant anxiety has affected her ability to sleep. Based on her testimony, Banks is entitled to $8,000 in compensatory damages for the emotional distress that she suffered. *See Yuzhaninov*, 2018 WL 11488017, at *5; *Henley*, 2011 WL 13228008, at *8.

### 6. Sydney Sheppard

Sheppard testified that after she was terminated for repeatedly asking Fusion management to pay her overdue wages, she suffered from financial stress and a loss of self-confidence. She explained that she fell into debt and had to max out several credit cards. Although Sheppard has consistently held other jobs, she has been unable to shake the feeling that her work in inadequate and that she is letting others down. Based on her testimony, Sheppard is entitled to $5,000 in compensatory damages for the emotional distress that she suffered. *See Yuzhaninov*, 2018 WL 11488017, at *5; *Henley*, 2011 WL 13228008, at *8.

### D. Total Compensatory Damages

Based on the above, Plaintiffs are awarded the following amounts in compensatory damages for their FLSA claims:

| Employee | Lost Wages | Liquidated Damages | Retaliation Emotional Distress Damages | Total |
|---|---|---|---|---|
| McNair | $17,176.10 | $17,176.10 | $5,000 | $39,352.20 |
| Banks | $12,150 | $12,150 | $8,000 | $32,300 |
| Sheppard | $10,086.05 | $10,086.05 | $5,000 | $25,172.10 |
| Love | $21,148.60 | $21,148.60 | N/A | $42,297.20 |
| Pitman | $9,881.50 | $9,881.50 | $5,000 | $24,763 |

| Maxwell | $29,375.25 | $29,375.25 | $5,000 | $63,750.50 |
| Pearl | $9,921.00 | $9,921.00 | $5,000 | $24,842 |
| | | | | **$252,477** |

## IV. Attorney's Fees

"Prevailing FLSA plaintiffs are 'automatically entitled to attorneys' fees and costs.'" *P&k Rest. Enterprise, LLC v. Jackson*, 758 F. App'x. 844, 847 (11th Cir. 2019) (citing *Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 n. 12 (11th Cir. 2007)).

Plaintiffs seek $81,115 in attorney's fees and $867 in costs,[7] for a total of $81,982. (Doc. 52 ¶ 23). Plaintiffs' counsel notes that although he has a contingency fee agreement with Plaintiffs—under which he is to receive 33.3% of their recovered unpaid wages—Plaintiffs are entitled of have Defendants cover their attorney's fees and costs. (*Id.* ¶ 21).

To start, contingency fee arrangements that allow counsel to receive a portion of FLSA plaintiffs' unpaid wages recoveries are generally impermissible. "The language of the [FLSA] contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (quoting *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946); *Hinton v. McGahan*, 2023 WL 6216533, at *2 (N.D. Ga. Aug. 15, 2023) (citing *Silva*, 307 F. App'x at 351). Thus, attorney fee awards in FLSA cases "should not be modeled on contingency fee

---

[7] The costs include the $402 filing fee, $455 process server costs, and $10 Secretary of State service costs. (Doc. 52 ¶ 23).

arrangements used in personal injury litigation and should not be deducted from the amount to which plaintiff is entitled to recover." *Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla. 2008) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 94, 96 (1989)), *aff'd*, 307 F. App'x 349 (11th Cir. 2009).

The Court will therefore determine what is a reasonable fee award for Defendants to pay, while treating as unenforceable any contingency fee arrangement that deducts anything from the unpaid wages due to Plaintiffs under the FLSA. *See Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1266–67 (M.D. Fla. 2008); *see also Hinton*, 2023 WL 6216533, at *2 (quoting *Brenowitz v. Implant Seminars, Inc.*, 2017 WL 3438879, at *3 (S.D. Fla. Aug. 10, 2017)) ("[A] Court may deem a contingency fee award unreasonable if a plaintiff is sacrificing a portion of his unpaid wages recovery to fund plaintiff's attorney's fees").

### A.    Legal Framework

The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge after proper application of a lodestar fee analysis. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Natco, Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001). "A lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable." *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

Plaintiffs, as the party seeking an award of fees, bear the burden of demonstrating the reasonableness of the hours worked and the rates claimed. *Hensley*, 461 U.S. at 433; *Norman*, 836 F.2d at 1304. That burden includes:

> supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

There is no precise rule or formula a court must follow in determining what is a reasonable fee award. The court may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37. A court may not both engage in an hour-by-hour analysis and impose an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008) ("[T]he district court is to apply either method, not both.").

**B.  Analysis**

    **1.  Reasonable Hourly Rate**

The Court's first task under the lodestar method is to determine a reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. Generally, "the relevant

legal community" is the "place where the case is filed." *See Cullens v. Ga. Dept't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).

"The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (cleaned up). "Satisfactory evidence" is "more than the affidavit of the attorney performing the work," and includes "direct evidence of charges by lawyers under similar circumstances or by opinion evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *See Norman*, 836 F.2d at 1299.

Plaintiffs claim a rate of $500 per hour for attorney Arnold J. Lizana III and $100 per hour for paralegal Victoria Huddleston. *See* (Doc. 52 ¶¶ 22, 23). In support, Plaintiffs provide a declaration in which Mr. Lizana details his more than 24 years of experience as an employment litigation attorney and identifies comparable FLSA cases in this district where the Court found it reasonable for attorneys of similar (or even less) experience to be paid $500 or more per hour. *See* (Doc. 64). Mr. Lizana also identifies two FLSA cases where the Court previously approved his hourly rate of $500 per hour. *See* (*id.* ¶ 23) (citing *Holland v. Ellis et al.*, 1:23-cv-2070, Docs. 12, 13 (N.D. Ga. 2023); *Frazier v. D&S Commercial Paint LLC*, 4:21-cv-39, Doc. 14 (N.D. Ga. 2021)).

17

Based on this evidence and the Court' experience with this district's legal markets,[8] the Court finds that $500 is a reasonable hourly rate for an attorney of Mr. Lizana's skill and experience. Likewise, the Court is satisfied that $100 is a reasonable hourly rate for Ms. Huddleston's paralegal services. *See, e.g., Spurlock v. Complete Cash Holdings, LLC*, 540 F. Supp. 3d 1201, 1210 (N.D. Ga. 2021).

### 2. Reasonable Number of Compensable Hours

The second step of the lodestar calculation is "the ascertainment of reasonable hours" worked. *Norman*, 836 F.2d at 1301. In submitting the number of hours worked, applicants must exercise "billing judgment" and exclude "excessive, redundant or otherwise unnecessary hours." *Id.* (citing *Hensley*, 461 U.S. at 434). This means that "a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.2d at 1301. For example, "a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Id.* at 1306.

Mr. Lizana has provided itemized billing records for himself and Ms. Huddleston's services, as well as for his claimed costs. *See* (Billing Report, Doc. 52-2). He represents that he has reviewed the records and made revisions "to account

---

[8] *See Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303) ("A court . . . 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'").

for duplication of recorded hours" and to reflect his billing judgment. *See* (Doc. 52 ¶ 22). He requests to be compensated for 160.05 of his own billable work, in addition to 10.90 hours of billable work by Ms. Huddleston. (Doc. 52 ¶ 22). Upon reviewing Mr. Lizana's Billing Report, the Court finds that a further 15% reduction to Mr. Lizana's hours is required to reach a reasonable number of compensable hours, to account for the inclusion of some unrecoverable administrative tasks, such as filing papers with the Court. *See Spurlock*, 540 F. Supp. 3d at 1214–15 (making a 10% across-the-board reduction to compensable hours to account for the inclusion of certain administrative tasks and redundancies in drafting of documents such as the Complaint). This results in the following fee calculations:

|  | Hourly Rate | Compensable Hours | Total |
|---|---|---|---|
| **Lizana** | $500 | 136.05 | $68,025 |
| **Huddleston** | $100 | 10.90 | $1,090 |
|  |  |  | **$69,115** |

Adding the $69,115 in fees to the $867 in costs results in a total award of $69,982 in attorney's fees and costs.

V. Conclusion

As all outstanding matters as to damages and attorneys' fees in this case are resolved by virtue of this Order, the Court hereby **DIRECTS** the Clerk's Office to enter **FINAL JUDGMENT** in this matter, consistent with the provisions of this Order. Specifically, the Court **AWARDS** Plaintiffs **$252,477** in compensatory damages, to be paid to each plaintiff, in relevant part, **by individual check** as

specified in Section III.D, *supra*. The Court also **AWARDS** Plaintiffs **$69,115** in attorney's fees and **$867** in costs to be paid by Defendants to Attorney Arnold J. Lizana III, Plaintiffs' counsel of record.[9]

**IT IS SO ORDERED** this 7th day of November, 2024.

_____
**Honorable Amy Totenberg**
**United States District Judge**

---

[9] As previously stated, no amount may be deducted from Plaintiffs' FLSA compensatory damages to cover Mr. Lizana's attorney's fees and costs.